# United States District Court
### for the
### Western District of New York

| | |
|---|---|
| United States of America <br><br> v. <br><br> EDUARDO GALAN <br><br> _Defendant_ | ) <br> ) <br> ) Case No. 13-MJ-535 <br> ) <br> ) <br> ) <br> ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of __2001 to present,__ in the county of ____Monroe____ in the Western District of New York, the defendant violated ____18____ U.S.C. § ____1341____, an offense described as follows:

**Defendant devised and engaged in a scheme to defraud investors, and to obtain money from investors based upon false representations and promises, and that in the furtherance of such scheme, did use the mails and did cause the mails to be used.**

This criminal complaint is based on these facts:

X   Continued on the attached sheet.

Please see attached affidavit

_____
_Complainant's signature_

Seth Fleitman, Special Agent, FBI
_Printed name and title_

Sworn to before me and signed in my presence.

Date: MARCH 5, 2013

_____
_Judge's signature_

City and State: Rochester, New York

Hon. Jonathan W. Feldman, U.S. Magistrate Judge
_Printed name and title_

**AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT**

STATE OF NEW YORK )
COUNTY OF MONROE  ) ss:
CITY OF ROCHESTER )

13 mj 535

I, SETH FLEITMAN, having been first duly sworn, do hereby depose and state as follows:

1. I am a Special Agent of the Federal Bureau of Investigation (FBI) and have been so employed for over 9 months. I have been trained to investigate, and participated in investigation of, a wide range of federal criminal violations, including violent crimes, health care fraud, mortgage fraud, securities fraud and wire fraud. I am empowered by law to conduct investigations of, and make arrests for, offenses against the United States.

2. This affidavit is submitted in support of a criminal complaint charging EDUARDO GALAN with mail fraud, in violation of Title 18, United States Code, § 1341.

3. The statements contained in this affidavit are based upon my training, experience and personal knowledge gained during my investigation of GALAN, information provided by other law enforcement agents involved in the investigation, information recorded on documents obtained during the investigation, information provided by individuals who

interacted with GALAN, and victims of the fraud discussed herein. Because this affidavit is being submitted for the limited purpose of obtaining a criminal complaint, I have not included each and every fact known to me concerning this investigation.

4. From at least 2001 to present, GALAN owned and operated an investment advice and financial services business. GALAN conducted his business through various entities, including S&G Unlimited Services ("S&G").

5. Among other financial instruments and services, GALAN offered clients the opportunity to invest in real estate through private mortgages that GALAN purported to broker. GALAN typically conducted this aspect of his financial services business as S&G.

6. As described in greater detail below, GALAN did not use his client's money to underwrite private mortgages. Instead, in Ponzi-type scheme that continued for almost a decade, GALAN used his clients' investment monies for his personal and business expenses, as well as to fund payments to other, earlier investors.

7.   In this way, GALAN defrauded at least 10 individuals of at least $100,000 between 2001 and 2012.  Accounts provided by a representative selection of his victims are summarized below.

### Victim 1

8.   In 2009, Victim 1 invested approximately $60,000 with GALAN in private mortgages.  GALAN told Victim 1 that Victim 1's money was being invested in private mortgages through S&G to purchase real estate.  Victim 1 did not understand the transaction to be an unsecured, personal loan to GALAN, and did not authorize such a loan.

9.   GALAN prepared a promissory note associated with the investment that promised monthly repayments of principal plus interest at 10% over a period of 180 months (15 years).  GALAN paid Victim 1 returns on the investment up until approximately late 2010, at which time the payments stopped.  According to Victim 1, he/she is still owed approximately $52,000 in principal on the investment.

### Victim 2

10.   In 2009, Victim 2 invested approximately $116,000 with GALAN in private mortgages to be brokered through S&G.  Victim 2 understood that the money was used for a private mortgage and

3

that the investment was secured by collateral. Victim 2 did not understand the transaction to be an unsecured, personal loan to GALAN, and did not authorize such a loan.

11. GALAN prepared a promissory note associated with the investment that promised monthly repayments of principal plus interest at 10% over a period of 180 months (15 years). GALAN paid Victim 2 returns on the investment until sometime in 2010. The vast majority of Victim 2's principal investment has not been repaid.

*Victim 3*

12. Between 2004 and 2007, Victim 3 invested approximately $384,000 with GALAN. GALAN told Victim 3 that Victim 3's money was being invested in private mortgages through S&G to purchase real estate. Victim 3 did not understand the transaction to be an unsecured, personal loan to GALAN, and did not authorize such a loan.

13. GALAN prepared a promissory notes associated with the investments that promised monthly repayments of principal plus interest at 8% over a period of 180 months (15 years).

14. After GALAN stopped paying the returns on the investment, Victim 3 set up a meeting around October 1, 2012, to

talk to GALAN in his office located at 6 Sweden Lane, Brockport, New York. At this meeting, GALAN explained why the payments stopped, what was going on with S&G and he also mentioned other clients that were owed money to as well.

15. Victim 3 estimates that he/she is still owed approximately $336,000 in principal.

### Victim 4

16. Sometime around 2001, Victim 4 invested approximately $125,000 with GALAN. GALAN represented that the investment would be allocated to 3 separate private mortgages, and would earn an 8% rate of return.

17. Later, in 2006, the original investment was "restructured" by GALAN, and Victim 4 was given a promissory note by GALAN that guaranteed monthly repayments of principal plus interest at 9% over 180 months (15 years).

18. Sometime in 2011, the investment was again "restructured" by GALAN, and Victim 4 received a new promissory note that promised to make monthly repayments of principal plus interest at 5% over 240 months (20 years). The new promissory note was mailed to Victim 4, using the United States Postal Service, and GALAN asked Victim 4 to acknowledge it and mail it back to GALAN at 6 Sweden Lane, Brockport, New York.

19. In late 2011, Victim 4 stopped receiving returns on investment from GALAN. Subsequently Victim 4 telephoned GALAN's office to figure out what was happening with the investment. Victim 4 spoke with GALAN and his assistant. After speaking with GALAN, Victim 4 received two more checks repaying portions of the investment, and then the payments ceased. Victim 4 believes he/she has lost approximately $60,000 in principal.

*Victim 5*

20. In approximately 2008, Victim 5 started using GALAN as a financial investor and accountant. GALAN solicited Victim 5 to invest approximately $75,000 in private mortgages through S&G. Victim 5 did not understand the transaction to be an unsecured, personal loan to GALAN, and did not authorize such a loan.

21. GALAN gave Victim 5 a promissory note that guaranteed monthly repayments of principal plus interest at 8.5% interest over 180 months (15 years).

22. For around two years, Victim 5 received the expected monthly payments from GALAN, until approximately early 2010. Victim 5 recalled having read an article in the Democratic and Chronicle about GALAN, and how many individuals had invested in purported private mortgages and promissory notes with GALAN.

The article stated that he was filing bankruptcy and unable to pay his investors. Upon reading this, Victim 5 attempted to recover the investment from GALAN, and also went to see if his/her name was disclosed in the bankruptcy papers.

23. Victim 5 was not successful in recovering his/her investment from GALAN. Victim 5 also discovered that he/she was not identified by GALAN as a creditor in the bankruptcy proceeding. Victim 5 estimates that GALAN owes him approximately $63,000 in principal.

*Victim 6*

24. In 2005, Victim 6 started engaged GALAN as an investment advisor. In 2006, GALAN solicited Victim 6 to invest approximately $30,000 in private mortgages through S&G. GALAN gave Victim 6 a promissory note guaranteeing a monthly repayments of principal plus interest at 8% over 180 months (15 years).

25. Victim 6 never received any returns from this private mortgage, and was never repaid any amount of the $30,000 invested with GALAN.

*Victim 7*

26. In 2007, Victim 7 invested approximately $150,000 with GALAN in promissory notes. GALAN told Victim 7 that his/her

7

money was being invested in private mortgages through S&G. Victim 1 did not understand the transaction to be an unsecured, personal loan to GALAN, and did not authorize such a loan. GALAN gave Victim 7 a promissory note that guaranteed monthly repayments of principal plus interest at 9% over 180 months (15 years).

27. Initially GALAN made the monthly payments by wire transferring funds into Victim 7's account at M&T Bank. Sometime in late 2010, GALAN began to mail checks to Victim 7 instead of using wire transfers. Among other mailings, GALAN sent a letter that enclosed a payment as well as correspondence proposing to modify the existing promissory note to reduce the interest rate from 9% to 6%, and to pay down the principal balance by $10,000. In the correspondence, GALAN asked Victim 7 to sign the modification and return it to GALAN. Sometime after this change the payments started to slow down and eventually stopped.

28. Victim 7 asked GALAN why the payments had stopped and how he/she could receive their investment back. GALAN represented that he was not able to return Victim 7's investment because it was tied up in real properties. Instead of returning Victim 7's investment, GALAN offer to put certain deeds to real property in Victim 7's name.

8

29. GALAN, however, did not put any real property in Victim 7's name, and Victim 7 estimates he/she is still owed more than $150,000 from his investment (including principal and accrued interest).

### Victim 8

30. Sometime around 2005, Victim 8 invested approximately $170,000 with GALAN. GALAN told Victim 8 that the money was being invested in private mortgages through S&G. Victim 8 did not understand the transaction to be an unsecured, personal loan to GALAN, and did not authorize such a loan. GALAN gave Victim 8 a promissory note that guaranteed monthly repayments of principal plus interest at 13% over 180 months (15 years).

31. Victim 8 never received any returns on this investment and estimates his/her loss of principal to be approximately $170,000. Victim 8 recently met with GALAN in his place of business at 6 Sweden Lane, Brockport, New York, regarding tax issues.

### Information Obtained from a Former Employee of GALAN

32. GALAN hired an individual to be his office secretary in approximately 1997 (the "secretary"). The secretary worked with GALAN until 2008, assuming increasing responsibilities over

time, including managing payables and receivables, tracking client files, and maintaining the S&G's books.

33. The secretary deposited client investments into S&G bank accounts, and also make payments to clients with investments from S&G bank accounts.

34. From time to time, when there was not sufficient money in the S&G account to pay investors amounts owed, the secretary stated that GALAN would seek to obtain money from additional investments. The additional investment would then be used to pay the current investors in accordance with GALAN's instructions.

35. The secretary remembered keeping notes on the clients' files regarding the amount of each client's investments and amounts paid to the client. The files were maintained by GALAN at his place of business, 6 Sweden Lane, Brockport, New York. She vaguely remembered that some investments possibly had collateral securing the investment, such as some property.

*Conclusion*

39. Based on the foregoing, it is respectfully submitted that there is probable cause to believe that GALAN devised and engaged in a scheme to defraud investors, and to obtain money from investors based upon false representations and promises,

and that in furtherance of such scheme, GALAN did use the mails and did cause the mails to be used, all in violation of Title 18, United States Code, Section 1341.

                                            SETH FLEITMAN
                                            Special Agent
                                            Federal Bureau of Investigation

Sworn to before me this
5 day of March, 2013.

Hon. JONATHAN W. FELDMAN
United States Magistrate Judge
Western District of New York